IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN WALTER RIGGINS, Administrator of the Estate of NELLIE DONITHAN RIGGINS, Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | 1:16CV1213 |
| SSC YANCEYVILLE OPERATING COMPANY, LLC, d/b/a BRIAN CENTER HEALTH & REHABILITATION/ YANCEYVILLE, SAVASENIORCARE, LLC, and LIVING CENTERS-SOUTHEAST, INC., Defendants. | ) ) ) ) ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment by Defendant SSC Yanceyville Operating Company, LLC ("SSC Yanceyville") d/b/a Brian Center Health & Rehabilitation/Yanceyville ("The Brian Center")[1], [Doc. #41], in which SSC Yanceyville challenges the sufficiency of the evidence supporting a single element of Plaintiff's medical malpractice action – causation. SSC Yanceyville has also moved to strike the affidavit of Plaintiff's expert, Dr. Carol

---

[1] Living Centers – Southeast, Inc. was dismissed pursuant to a Joint Stipulation of Dismissal on October 19, 2016. (Jt. Stipulation of Dismissal [Doc. #19].) SavaSeniorCare, LLC was dismissed on January 26, 2017 for lack of personal jurisdiction. (See Mem. Order [Doc. #22].) Therefore, the only remaining defendant is SSC Yanceyville.

Rupe. [Doc. #49.] For the reasons that follow, the motion for summary judgment is granted, and the motion to strike is granted in part and denied in part.

I.

In November 2007, Nellie Donithan Riggins was admitted to The Brian Center for long-term care.[2] (Med. Report at 1 (Dec. 20, 2017) [Doc. #44-1].) In July 2014, after Riggins was diagnosed with dysphagia, it was ordered that her liquids taken orally be thickened. (Id.; Dep. of Carol Rupe 36:17-24 (Feb. 6, 2018) [Doc. #43-1].) Accordingly, nurses' monthly summaries for July and August 2014 listed thickened liquids as among Riggins' dietary needs, and thickening solution, which can prevent aspiration and possible pneumonia, was included on her meal trays for the responsible staff to place in her liquids at each meal. (Med. Report at 1; Dep. of Rupe 36:16-37:25.)

On September 3, 2014, Riggins experienced a sudden episode of shortness of breath, necessitating a chest x-ray which suggested possible congestive heart failure. (Med. Report at 1.) Riggins was transported to the Emergency Department at Danville Regional Medical Center where she was found to be in acute hypoxic respiratory distress, febrile, and tachypneic. (Id.) A chest x-ray showed bibasilar atelectasis, and Riggins was placed on BiPAP to aide her respiratory distress. (Id.) By September 5, physicians' assessments of Riggins included "severe sepsis

---

[2] Neither party submitted any of Riggins' medical records. The only evidence before the Court is the medical report by Dr. Carol Rupe, Plaintiff's expert, a transcript of Dr. Rupe's deposition, and Dr. Rupe's affidavit.

2

secondary to UTI with impending cardiopulmonary arrest, advanced Alzheimer's disease, and hypothyroid". (Dep. of Rupe 49:18-23.) Riggins did not want heroic measures performed if she appeared to be near the end of her life and was placed in "do not resuscitate" status. (Id. at 29:2-7; Med. Report at 1.) She was receiving comfort care on a hospice unit when she died on September 8, 2014. (Dep. of Rupe 50:23-25.) Her death certificate listed the definitive diagnosis as sepsis secondary to UTI, while the discharge summary completed soon after her death stated the diagnosis was "secondary to cardiopulmonary arrest succumbing to multisystem organ failure." (Id. 49:6-13.)

II.

Plaintiff, Administrator of Riggins' estate, filed this medical malpractice action alleging that SSC Yanceyville and its agents, employees, and representatives breached their duty of care to Riggins by (1) continuing her on a non-nectar-thickened liquid diet when they knew, or in the exercise of reasonable care should have known, that she had been diagnosed with oropharyngeal dysphasia and required nectar-thickened liquids, (2) completely disregarding obvious signs of Riggins' continuous aspiration and septic condition, and (3) failing to (a) follow the treating physician's order that Riggins be placed on nectar-thickened fluids on July 2, 2014, (b) take appropriate measures to prevent repeated failures to administer the nectar-thickened fluids, (c) identify signs of Riggins' aspiration and septic condition resulting from a non-nectar-thickened liquid diet, (d) accurately assess Riggins' to determine her health concerns and issues, (e)

3

use any care to prevent her from continuously aspirating on non-nectar-thickened liquids and from becoming septic due to continuous aspiration, (f) use reasonable care to supervise and/or monitor Riggins' condition despite knowledge of her diagnosis of oropharyngeal dysphagia, the treating physician's order for nectar-thickened fluids, and her being maintained on a non-nectar-thickened liquid diet, (g) appropriately intervene when Riggins continuously aspirated and became septic, (h) timely notify a physician or appropriate professional that Riggins was maintained on a non-nectar-thickened liquid diet, continuously aspirated, and was septic, (i) appropriately report and respond to signs of her continuous aspiration and septic condition, (j) appropriately observe, monitor, supervise, and otherwise protect her health and well-being, and (k) take reasonable precautions, properly administer proper fluids to Riggins, and look after her and inform a physician or appropriate professional important elements of her condition as she would have done if she had been able to do so herself. (Compl. ¶¶ 35-38.t. [Doc. #14].) "Each and all of the aforementioned acts and omissions, operating singularly and in combination, were a direct and proximate cause of the incidents [alleged in the Complaint] and [Riggins'] injuries". (Id. ¶ 39.)

III.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(a)." Groves v. Commc'n Workers of Am., 815 F.3d

4

177, 181 (4th Cir. 2016). The moving party bears the initial burden of establishing "the basis for its motion[] and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)³). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Id. at 248. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Id. The court cannot weigh the evidence, by failing to credit contradictory evidence, or make credibility determinations. Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651 (4th Cir. 2018).

A.

While Plaintiff alleges that "[t]his case is an ordinary negligence case, not a medical malpractice case", he does so as part of his constitutional challenge to North Carolina's cap on noneconomic damages. (See id. ¶ 12 (citing N.C. Gen.

---

³ Rule 56(c) was amended effective December 1, 2010, but the substance of the rule did not change.

5

Stat. § 90-21.19).)  Not only do his allegations sound in medical malpractice, see Littlepaige v. United States, 528 F. App'x 289, 293 (4th Cir. Jun 12, 2013) (unpublished) (quoting Deal v. Frye Reg'l Med. Ctr., Inc., 691 S.E.2d 132 (table), 2010 WL 522727, at *2 (N.C. Ct. App. Feb. 16, 2010)), but he does not contest SSC Yanceyville's characterization of the action as one alleging medical malpractice and, in fact, analyzes medical malpractice case law in opposition to SSC Yanceyville's motion for summary judgment and has designated standard of care and causation experts as required in medical malpractice cases.  Therefore, there seems to be no dispute that this is a medical malpractice action.

B.

In support of a medical malpractice action, a plaintiff "must normally" proffer "evidence which (1) establishes the applicable standard of care, (2) demonstrates that this standard of care has been violated, and (3) develops a causal relationship between the violation and the harm complained of." Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982).  Because this is a diversity action, state law determines the standard of care, whether it was violated, and whether the violation proximately caused the patient's injuries. Fitzgerald, 679 F.2d at 346; see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig., 227 F. Supp. 3d 452, 468-69 (D.S.C. 2017) (finding "that a state law requirement that expert testimony is necessary to establish a particular element of a cause of action, such as causation, is a statement of state substantive policy" and "must be applied"), aff'd, 892 F.3d 624 (4th Cir. 2018).  On the other hand, federal law

controls "whether there is sufficient evidence to create a jury issue of those essential elements of the action, as defined by state law". Id.

SSC Yanceyville has moved for summary judgment on the basis that "Plaintiff's causation expert could not say that the cause of the aspiration . . . was the result of providing an improper thin liquid diet" and, "[i]nstead, . . . espoused that there were several possible causes of the aspiration". (Def.'s Mem. in Supp. at 6 [Doc. #43].)  In North Carolina, not only does a plaintiff establish the standard of care with expert testimony, but medical experts are relied upon "to show medical causation because the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen." Day v. Brant, 721 S.E.2d 238, 246 (N.C. Ct. App. 2012) (internal quotations omitted).  "Only if the opinion evidence on causation, as offered by the plaintiff, rises to the level of a 'reasonable degree of medical certainty' that it was more likely that the defendant's negligence was the cause than any other cause, is there sufficient evidence on causation to permit jury submission on causation." Fitzgerald, 679 F.2d at 350; see also Blake v. Juskevich, 998 F.2d 1008 (4th Cir. July 28, 1993) (unpublished) (affirming the district court's order granting the defendant's motion for directed verdict where the plaintiff's causation expert testified that it was "more probable than not" that the injury would not have occurred had a caesarean section been performed, but that he could not be reasonably certain of his medical conclusions).  While an expert need not use the magic words "reasonable degree of medical certainty", "the

7

expert's testimony taken as a whole must still demonstrate that the expert is confident in his or her opinion to a reasonable degree of certainty". Jordan v. Iverson Mall Ltd. P'ship, No. GJH-14-37, 2018 WL 2391999, at *6 (D. Md. May 25, 2018).

The Fourth Circuit Court of Appeals, quoting McMahon v. Young, 276 A.2d 534, 535 (Pa. 1971), explained the necessity for such specificity:

> The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that that condition was legally caused by the defendant's conduct. [Evidence] that it was 'probably' caused . . . is not enough. Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

Fitzgerald, 679 F.2d at 350-51.

Here, SSC Yanceyville argues that the opinion of Plaintiff's causation expert, Dr. Carol Rupe, lacks the requisite specificity, because she testified about several possible causes of Riggins' aspirations but could not say within a reasonable degree of medical certainty what caused the aspirations. (Def.'s Mem. in Supp. at 1-3, 6.) Plaintiff urges that a review of the entirety of Dr. Rupe's deposition testimony, as well as her affidavit, requires denying summary judgment. (See Pl.'s Mem. in Opp'n at 2-4, 8-10 [Doc. #44].)

8

1.

In her expert report, Dr. Rupe opines "within a reasonable degree of medical certainty that the care providers at The Brian Center did breach the standard of care . . . and that this breach led to [Riggins'] death". (Med. Report at 2.) More specifically, The Brian Center's negligence in failing to add thickener to Riggins' liquids "more likely than not led to aspiration which to a reasonable degree of medical certainty caused sudden shortness of breath and acute respiratory hypoxia." (Id.) Dr. Rupe summarized her opinion:

> That more likely than not the breach in the standard of care by the staff at The Bryan [sic] Center in not placing thickener in Ms. Riggins['] thin liquids caused Ms. Nellie Riggins to suffer an acute aspiration on September 3, 2014 which caused the development of an Aspiration Pneumonia which ultimately led to her demise.

(Id.) Dr. Rupe's opinion as stated in her expert report can be broken into two parts: (1) The Brian Center's negligence in failing to add thickener to Riggins' liquids "more likely than not" caused her to aspirate, and (2) the aspiration "to a reasonable degree of medical certainty" caused her sudden shortness of breath and acute respiratory hypoxia.

Dr. Rupe's testimony during her deposition is consistent with her written report. She opined that on September 3, 2014, Riggins aspirated on lunch, or a snack, or possibly pureed foods or her own secretions, but more likely than not aspirated on thin liquids. (Dep. of Rupe 34:20-35:2, 35:13-20, 36:4-6, 71:8-9.) Dr. Rupe acknowledged, though, that "[w]e don't know on what" Riggins aspirated. (Id. at 42:8-16; see also id. at 65:7-10 ("I don't know which fluid, no,

9

or food.").)  Ultimately, after she once again testified that "the most likely candidate would be the liquids", she was asked, "But, you can't say that to a reasonable degree of medical certainty?" to which she responded, "No." (Id. at 71:8-12, 71:15-19; see also id. at 36:1-8.)  Not only did she explicitly testify that she could not say to a reasonable degree of medical certainty that it was more likely than not that Riggins aspirated on thin liquids, but nothing else in her testimony taken as a whole or in her expert report demonstrates that Dr. Rupe is confident in her opinion as to the aspiration's cause to a reasonable degree of medical certainty.  Her opinion is, therefore, not sufficient evidence on causation to reach the jury. See Blake, 998 F.2d at *2-3 (describing similar expert testimony as "a situation where a medical expert witness was not sure of his conclusions" and affirming the directed verdict in favor of the defendant because of insufficient evidence of causation to go to the jury).

2.

In opposition to SSC Yanceyville's motion for summary judgment, Plaintiff attached a July 25, 2018 affidavit of Dr. Rupe. (See Ex. B to Pl.'s Mem. in Opp'n [Doc. #44-2].)  SSC Yanceyville challenges the propriety of Plaintiff's filing this affidavit in opposition to summary judgment, characterizes it as "clearly contradict[ing] prior deposition testimony", and moves to strike the affidavit. (See Def.'s Resp. to Pl.'s Mem. in Opp'n & Mot. to Strike [Doc. #45]; Def.'s Mot. to Strike [Doc. #49].)

10

"It is well-settled that a party cannot create a genuine issue of material fact by submitting an affidavit with statements that directly contradict the affiant's previous sworn deposition testimony." McLaurin v. E. Jordan Iron Works, Inc., 666 F. Supp. 2d 590, 598 (E.D.N.C. 2009) (citing Rohrbough v. Wyeth Lab., Inc., 916 F.2d 970, 975 (4th Cir. 1990)). For this rule to apply, "there must be a bona fide inconsistency" between the deposition testimony and the affidavit's statements. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n.7 (4th Cir. 2001).

Here, it is unclear exactly what Plaintiff seeks to achieve with Dr. Rupe's affidavit, because her averments are both consistent and inconsistent with her deposition testimony and, at times, confusing. She first states that her expert report contains all of her opinions in this matter regarding causation. (Aff. of Rupe ¶ 4 (July 25, 2018) [Doc. #44-2].) She acknowledges that, during her deposition, she "could not, with certainty" state what caused Riggins to aspirate and then explains what "certainty" means to her – "one hundred percent, or close to it". (Aff. of Rupe ¶¶ 6, 7.) "Without having witnessed Ms. Riggins actually aspirating, I would never say I was certain as to what she aspirated." (Id. ¶ 7.)

With that in mind, Dr. Rupe then avers that her opinions espoused during her deposition – that it was more likely than not that Riggins aspirated on a thin liquid and that she could not say with certainty that she aspirated on a thin liquid – "are within a reasonable degree of medical causation and probability." (Id. ¶ 8.) She also states that "it was and remains my opinion that Ms. Riggins, more likely than not, aspirated on a thin liquid. It is my further opinion that this aspiration led to

11

aspiration pneumonia and Ms. Riggins's death." (Id. ¶ 9.)  She then characterizes these opinions as being "within a reasonable degree of medical causation and probability." (Id.)

Plaintiff argues that "Dr. Rupe offered her opinions, to a reasonable degree of medical probability and causation . . . and her opinions have remained consistent and clear throughout the pendency of this matter." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Strike at 3 [Doc. #51].)  Further, "Dr. Rupe's Affidavit echoes her opinions offered in her report and during her deposition". (Id. at 3-4.)  However, it is difficult to discern precisely what Dr. Rupe means when she characterizes various opinions as being within a reasonable degree of medical causation and probability, because of her proffered personal definition of the word "certainty" and her inability during her deposition to offer an opinion within a reasonable degree of medical certainty what caused Riggins to aspirate.

Despite Dr. Rupe's apparent attempt in her affidavit to explain why she answered "no" when asked to testify to a reasonable degree of medical certainty, she never testified about her reservation of the use of that phrase or her particular understanding of the word "certainty".  When afforded an opportunity to question Dr. Rupe during her deposition at the conclusion of defense counsel's examination, Plaintiff's counsel declined. (See Dep. of Rupe at 78:7-10.)  Furthermore, despite the directive in Rule 30(e) of the North Carolina Rules of Civil Procedure that the deponent examine and review the transcript of her deposition testimony and be given the opportunity to state any changes to such testimony, Dr. Rupe and the

parties must either have waived such review or Dr. Rupe found nothing upon review that necessitated change. Yet, once SSC Yanceyville challenged the sufficiency of Dr. Rupe's causation testimony, Plaintiff submitted her affidavit.

To the extent that Dr. Rupe's averments are not inconsistent with her deposition testimony and, as Plaintiff argues, her affidavit echoes her opinions offered in her report and during her deposition, the affidavit is properly before the Court. However, because it merely "echoes" Dr. Rupe's previously stated opinions, it does not change the determination that Plaintiff's evidence on causation is insufficient to reach a jury.

To the extent that Dr. Rupe's averments are bona fide inconsistencies with her deposition testimony, such as when she characterizes her opinion that it is more likely than not the thin liquids that caused Riggins to aspirate as being within a reasonable degree of medical causation and probability, the affidavit cannot be used to defeat the motion for summary judgment. Therefore, the motion to strike is granted in part and denied in part.

IV.

For the reasons explained above, IT IS HEREBY ORDERED that the Motion for Summary Judgment by Defendant SSC Yanceyville Operating Company, LLC d/b/a/ Brian Center Health & Rehabilitation/Yanceyville [Doc. #41] be GRANTED and that the Motion to Strike by Defendant SSC Yanceyville Operating Company,

LLC d/b/a/ Brian Center Health & Rehabilitation/Yanceyville [Doc. #49] be GRANTED IN PART AND DENIED IN PART.  A judgment dismissing this action will be filed contemporaneously with this order.

This the 13th day of September, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge